UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| MAURICE OLIVIER,<br><br>      Plaintiff,<br><br>vs.<br><br>R. GROUNDS, et al.,<br><br>      Defendants. | Case No: C 12-0176 SBA<br><br>**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |

      Plaintiff, a state prisoner in the custody of the California Department of Corrections and Rehabilitation ("CDCR"), filed the instant pro se civil rights action under 42 U.S.C. § 1983 alleging Eighth Amendment claims for deliberate indifference to serious medical needs by staff at the California Training Facility ("CTF") in 2011.  He claims that Dr. M. Sepulveda ("Defendant Sepulveda") failed to provide him with pain medication allegedly approved by other physicians, and that Warden R. Grounds ("Defendant Grounds"), Correctional Counselor K. Mensing ("Defendant Mensing") and Chief Deputy Warden-C M. Spearman ("Defendant Spearman") were deliberately indifferent in refusing to authorize his request for daily yard access.  The parties are presently before the Court on Defendants' Motion for Summary Judgment.  Having read and considered the papers submitted and being fully informed, the Court hereby GRANTS Defendants' motion.

I.  **BACKGROUND**

   A.  **PAIN MEDICATION**

Plaintiff alleges in his verified complaint that he suffers from chronic fibromyalgia, migraines, insomnia, acid reflux, high blood pressure, hypertension, emotional distress, anxiety and constipation. Compl., Dkt. 1 at 7.[1] Prior to his transfer to CTF on December 21, 2010, Plaintiff was incarcerated at Calipatria State Prison ("Calipatria"). Id. at 16. In 2009, while at Calipatria, Dr. Straga, a neurologist, prescribed Topomax for Plaintiff's fibromyalgia, migraines and insomnia. Id. Plaintiff continued to receive Topomax for the duration of his incarceration at Calipatria, through 2010. Id.

Upon Plaintiff's arrival at CTF, Plaintiff's prescription for Topomax was not renewed. Id. As such, on January 18, 2011, Plaintiff submitted a CDCR 602 inmate appeal ("602 appeal"), log no. CTF-14-11-10347, requesting to have his Topomax prescription renewed and to be seen by a doctor. Dkt. 2-2 at 21. On March 1, 2011, Plaintiff's First Level appeal was "partially granted." Id. at 21-22. The reviewer, Nurse Estamo, indicated that she had interviewed Plaintiff, reviewed his medical records, and confirmed that he had already been seen by Dr. Ahmed (his primary care physician) on February 16, 2011. Id. Nurse Estamo also indicated that she would submit a "non-formulary" request for Topomax that day. Id.[2]

---

[1] Page number citations refer to those assigned by the Court's electronic case management filing system and not those assigned by the parties.

[2] The prescribing of medications for inmates is governed by the CDCR's pharmacy service procedure. Sepulveda Decl. ¶ 3 and Ex. A. That procedure allows physicians to prescribe "formulary" medications as a matter of course, without obtaining prior approval from the Chief Medical Executive. Id. Formulary medications are those which have been deemed "appropriate and cost effective" by the CDCR. Id. However, non-formulary medications may not be dispensed without prior approval by the Chief Medical Executive. Id. Reasons for authorizing use of non-formulary medications include treatment failures with formulary medications, documented allergies, and side effects that prevent the use of formulary medication. Id.

On March 11, 2011, Plaintiff requested a Second Level Review, stating that he still had not received a prescription for Topomax. Id. On April 27, 2011, Plaintiff's request was "partially granted" by Defendant Sepulveda (Chief Medical Executive), and G. Ellis ("Ellis," Chief Executive Officer). These reviewers noted that Plaintiff had already been seen by Dr. Ahmed again on March 28, 2011, and that a prescription for Topomax was not medically indicated. Dkt. 2-2 at 25-26.[3]

On May 9, 2011, Plaintiff requested a Director's Level Review, stating that after his request for Topomax was denied, he was prescribed two medications for his pain which resulted in adverse side effects. Id. at 22. Plaintiff's request was denied by non-party L.D. Zamora, Chief of the CDCR Office of Third Level Appeals. Id. at 20. The response states that there was "no compelling evidence" to warrant intervention, given that Plaintiff has been seen by physicians as requested, and received various medications, including Naproxen and Acetaminophen with Codeine, Gabapentin, Amitriptlyline (Elavil), and Propranolol. Id. at 20.

On July 25, 2011, Plaintiff was seen for a routine consult with neurologist Dr. Asela P. Jumao. Dkt. 1 at 14. Dr. Jumao recommended reinstatement of Plaintiff's Topomax on non-formulary basis. Id. Plaintiff alleges that this recommendation, however, was "never forwarded to North Medical Clinic to process." Id.

On October 23, 2011, Plaintiff filed a CDCR 7362 Request for Services, which requested an update on the status of his Topomax. Id. Plaintiff claims that on November 11, 2011, Dr. Ahmed submitted another non-formulary request for Topomax, which Defendant Sepulveda allegedly rejected on November 16, 2011. Id. However, Defendant

---

[3] Defendant Sepulveda was the Chief Medical Executive of CTF from January 2011 through September 2011. Sepulveda Decl. ¶ 1. As Chief Medical Executive, one of his duties was to review and process prescription requests for non-formulary medications in compliance with CDCR's Pharmacy Procedure. Under the Pharmacy Procedure, Defendant Sepulveda could not approve a non-formulary drug request unless one of the reasons outlined in the Procedure—or a similar basis—existed that justified giving the inmate-patient a non-formulary medication rather than a formulary drug. Id. ¶ 3 and Ex. A.

1  Sepulveda's last working day with the CDCR was September 30, 2011, and he no longer
2  reviewed medication requests as of October 1, 2011.  Sepulveda Decl. ¶ 5.
3        On December 12, 2011, Plaintiff was seen again by Dr. Ahmed, who submitted a
4  request for Plaintiff to receive Tylenol with Codeine and Naproxen to treat his pain.  Dkt. 1
5  at 14.  Plaintiff claimed that these medications did not sufficiently alleviate his pain.  Id.
6  After it was determined that Plaintiff's symptoms were not adequately addressed by
7  formulary medications, Plaintiff's request for Topomax was approved.  Vieyra Decl., Ex. E.
8  However, Plaintiff's medical records indicate that he has been refusing Topomax, instead
9  opting to treat his pain with other medications.  Id., Ex. F.

      **B.**    **REQUEST FOR DAILY EXERCISE**

11        When Plaintiff arrived at CTF, he was housed in the special needs yard ("SNY"),
12  and he was designated as an "A1A Unassigned inmate," meaning that he had not been
13  officially assigned to a work or training group.  Mensing Decl. ¶¶ 2-3, 6.  Plaintiff was
14  placed on a rotational schedule for yard time; each weekday, Plaintiff was afforded either
15  2.5 or 3.5 hours of yard time.  Id.; see also Dkt. 57-1 at 3-4.  However, when a CDCR-
16  recognized holiday fell on a weekday, Plaintiff did not have yard access because A1A
17  Unassigned inmates did not have yard access on holidays, weekends or evenings.  Id. at 3.
18  According to Plaintiff, Defendant Grounds instituted this policy, which denied Plaintiff
19  adequate exercise.
20        The record shows that on September 20, 2010, Defendant Grounds signed off on the
21  CDCR's Department Operations Manual ("DOM") Supplement #29, North Program and
22  Activity Schedule for SNY Inmates, SECTION 02 – Recreation/Privileges, which states as
23  follows: "To prevent yard and dayroom overcrowding, and to provide adequate
24  supervision of the yards for the safety of staff and inmates, on weekends, holidays and
25  evenings, only A1A Assigned inmates are authorized to attend yard and dayroom."  Dkt.
26  57-1 at 4.  In 2011, CDCR recognized thirteen state holidays that were observed throughout
27  the year.  Mensing Decl. ¶ 3.

On June 1, 2011, Plaintiff submitted a 602 appeal, log no. CTF-S-11-01222, requesting daily access to the yard and day room in order to alleviate the symptoms from his medical conditions. Dkt. 1 at 7. His 602 appeal was bypassed at the informal level and first level of review. Plaintiff specifically requested a reclassification as an "A1A Assigned inmate," or alternatively, that he receive a CDC 7410 comprehensive accommodation chrono for daily yard and dayroom access, including on weekends and holidays. Mensing Decl. ¶¶ 3-5; Dkt. 57-1 at 21-23.

Defendant Mensing met with Plaintiff on July 8, 2011, to discuss his various requests. Id. ¶¶ 5-6, Dkt. 57-1 at 25-26. On July 25, 2011, Defendant Mensing completed the Second Level Appeal Decision, which partially granted the appeal. He noted that Plaintiff "is being treated fairly and is afforded recreational yard activities and other privileges as other A1A Unassigned inmates." Dkt. 57-1 at 26.[4] Defendant Mensing established that Plaintiff "was receiving yard and dayroom access five days a week on all weekdays, apart from the rare instance when a weekday was also a state holiday." Mensing Decl. ¶ 6. He also confirmed that Plaintiff was "on a rotational schedule for yard time, and each weekday either 2.5 or 3.5 hours of yard time was made available to [Plaintiff] on the schedule." Id.

Defendant Mensing denied Plaintiff's request to be immediately reclassified as a A1A Assigned inmate because he had "not yet been officially assigned to a work or training group." Id. He also denied Plaintiff's request for a comprehensive accommodation chrono for daily yard and dayroom access because "there was no evidence or documentation showing that [Plaintiff] required daily exercise or yard or dayroom access for medical reasons." Id.

In November 2011, Dr. Ahmed denied Plaintiff's request for a medical chrono for daily exercise in the yard. Dkt. 55-1 at 2. Dr. Ahmed determined that Plaintiff did not

---

[4] Both Defendants Ground and Spearman approved Defendant Mensing's decision. Dkt. 57-1 at 22, 26.

1 require daily outdoor exercise to address his medical conditions, and noted that Plaintiff
2 was "not happy" that his request was denied.  Id.

3     **C.**    **PROCEDURAL SUMMARY**

4     On May 30, 2013, the Court reviewed Plaintiff's complaint and found that he had
5 alleged a cognizable claim against Defendant Grounds for instituting a policy that denied
6 Plaintiff adequate exercise.  Likewise, the Court found that Plaintiff had sufficiently alleged
7 that Defendant Spearman and Defendant Mensing denied him adequate exercise, thereby
8 exacerbating his medical conditions.  Dkt. 37 at 5.  As to Defendant Sepulveda, the Court
9 found that Plaintiff had stated a cognizable claim for deliberate indifference for denying the
10 pain medication that other doctors had prescribed for him.  Id. at 5.

11     Plaintiff's deliberate indifference claims against Drs. Ahmed and Ellis were
12 dismissed with leave to amend.  Id. at 5-6.  Plaintiff timely filed an Amended Complaint as
13 to Dr. Ahmed, which is discussed below.[5]  However, Plaintiff did not amend his claim
14 against Dr. Ellis, who is therefore dismissed from the action.  See London v. Coopers &
15 Lybrand, 644 F.2d 811, 814 (9th Cir. 1981).

16 **II.**    **LEGAL STANDARD**

17     **A.**    **MOTION FOR SUMMARY JUDGMENT**

18     Federal Rule of Civil Procedure 56 provides that a party may move for summary
19 judgment on some or all of the claims or defenses presented in an action.  Fed. R. Civ. P.
20 56(a)(1).  "The court shall grant summary judgment if the movant shows that there is no
21 genuine dispute as to any material fact and the movant is entitled to judgment as a matter of
22 law."  Id.; see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The moving
23 party has the burden of establishing the absence of a genuine dispute of material fact.
24 Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986); Fed. R. Civ. P. 56(c)(1)(A) (requiring
25 citation to "particular parts of materials in the record").  If the moving party meets this

26 ───────────
27 [5] The Amended Complaint did not reallege all the claims from the original complaint, but merely attempted to cure the deficiencies that resulted in the dismissal of the claim against Dr. Ahmed.  Therefore, the Court liberally construes the Amended Complaint
28 as a supplemental pleading under Federal Rule of Civil Procedure 15(d).

initial burden, the burden then shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. See Celotex, 477 U.S. at 324; Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986).

"On a motion for summary judgment, 'facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts.'" Ricci v. DeStefano, 557 U.S. 557, 586 (2009) (quoting in part Scott v. Harris, 550 U.S. 372, 380 (2007)). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." Anderson, 477 U.S. at 248. A factual dispute is genuine if it "properly can be resolved in favor of either party." Id. at 250. Accordingly, a genuine issue for trial exists if the non-movant presents evidence from which a reasonable jury, viewing the evidence in the light most favorable to that party, could resolve the material issue in his or her favor. Id. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." Id. at 249-50 (internal citations omitted). Only admissible evidence may be considered in ruling on a motion for summary judgment. Orr v. Bank of Am., 285 F.3d 764, 773 (9th Cir. 2002).

**B.    DELIBERATE INDIFFERENCE UNDER THE EIGHTH AMENDMENT**

The Eighth Amendment protects prisoners from inhumane conditions of confinement. Farmer v. Brennan, 511 U.S. 825, 832 (1994)). In order to prevail on an Eighth Amendment claim for inadequate medical care, a plaintiff must show "deliberate indifference" to his "serious medical needs." Estelle v. Gamble, 429 U.S. 97, 104 (1976). "This includes 'both an objective standard—that the deprivation was serious enough to constitute cruel and unusual punishment—and a subjective standard—deliberate indifference.'" Colwell v. Bannister, -- F.3d --, 2014 WL 3933736, *3 (9th Cir. Aug. 14, 2014) (citation omitted). To meet the objective element of the standard, a plaintiff must demonstrate the existence of a serious medical need. Estelle, 429 U.S. at 104. To satisfy the subjective element, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health and safety; the official must both be aware of facts from

1 which the inference could be drawn that a substantial risk of serious harm exists, and he
2 must also draw the inference." Farmer, 511 U.S. at 837.

## III. DISCUSSION

### A. PRELIMINARY ISSUES

#### 1. Supplemental Pleadings as to Dr. Ahmed

In its Order of Service, the Court found that Plaintiff had failed to allege facts sufficient to support a claim for deliberate indifference to serious medical needs against Dr. Ahmed, Plaintiff's primary care physician. Dkt. 37, 4-5, 7. Plaintiff's amendment to the pleadings fares no better. Dkt. 43. In essence, Plaintiff's complaint against Dr. Ahmed is that he failed to utilize the treatment program previously prescribed by Dr. Straga at Calipatria. He alleges that Dr. Ahmed tapered his dosage of Gabapentin to zero as of March 16, 2011. Dkt. 43 at 5.[6] Dr. Ahmed instead placed Plaintiff on Elavil (Amitriptlyline) and Propranolol, which Plaintiff claims caused him to suffer erectile dysfunction and fluid retention. Dkt. 43 at 5. On April 26, 2011, Dr. Ahmed switched Plaintiff to Acetaminophen with Codeine. Id. He alleges that Dr. Ahmed's treatment regimen exacerbated his migraine headaches, pain and insomnia. Id.

Based on the record presented, the Court finds that Plaintiff has failed to allege a cognizable claim for deliberate indifference to serious medical needs against Dr. Ahmed. Although Dr. Ahmed may not have provided Plaintiff with the specific medication requested, he prescribed other medication and referred him to a neurologist in response to his complaints. The 602 appeals confirm that Dr. Ahmed did not purposefully ignore Plaintiff's complaints of pain. While the course of action taken may not have been precisely what Plaintiff requested, a mere difference of opinions regarding the course of medical treatment fails to state a claim for deliberate indifference. See Franklin v. State of Or., State Welfare Div., 662 F.2d 1337, 1344 (9th Cir. 1981). Accordingly, the Court finds

---

[6] Plaintiff was taken off Gabapentin because the CDCR only allows the medication for patients who are suffering from shingles pain or a secondary treatment for patients with seizures." Dkt. 2-2 at 21.

- 8 -

1 that Plaintiff has failed to remedy the deficiencies cited by the Court in its Order of Service
2 regarding Dr. Ahmed, who is hereby dismissed as a party-defendant.

### 2. Motion for Appointment of Counsel

Plaintiff moves the Court to appoint counsel. Dkt. 52. The Ninth Circuit has held that a district court may ask counsel to represent an indigent litigant only in "exceptional circumstances," the determination of which requires an evaluation of both (1) the likelihood of success on the merits and (2) the ability of the plaintiff to articulate his claims pro se in light of the complexity of the legal issues involved. Terrell v. Brewer, 935 F.2d 1015, 1017 (9th Cir. 1991). Plaintiff has been able to present his claims adequately, the record is clear, and the issues are not complex. Accordingly, Plaintiff's motion for appointment of counsel is DENIED.

### 3. Requests Presented in Plaintiff's Opposition

#### a) Continuance

In his opposition, Plaintiff makes a conclusory argument that outstanding discovery issues leave the Court with "no other alternative but to issue an Order denying Defendants' Summary Judgment Motion via Rule 56(d)(1)." Dkt. 64 at 6. Rule 56(d) allows the Court to defer consideration of a motion where "a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot represent facts essential to justify its opposition." To obtain relief under Rule 56(d), "[t]he requesting party must show: (1) it has set forth in affidavit form the specific facts it hopes to elicit from further discovery; (2) the facts sought exist; and (3) the sought-after facts are essential to oppose summary judgment." Family Home & Fin. Ctr., Inc. v. Fed. Home Loan Mortg. Corp., 525 F.3d 822, 827 (9th Cir.2008).

Here, Plaintiff failed to file the required affidavit, a deficiency that itself justifies denying the instant Rule 56(d) request. In addition, Plaintiff fails to describe the specific facts that would be revealed or why this discovery would preclude summary judgment. "Failure to comply with the requirements of Rule [56(d)] is a proper ground for denying discovery and proceeding to summary judgment." Brae Transp., Inc. v. Coopers &

1 Lybrand, 790 F.2d 1439, 1443 (9th Cir. 1986).  Therefore, Plaintiff's request for a
2 continuance pursuant to Rule 56(d) is DENIED.

### b) *Appointment of an Expert*

Pursuant to Rule 706 of the Federal Rules of Evidence, Plaintiff requests the appointment of a medical expert witness to assist him with the development of the record for the purpose of responding to Defendants' motion for summary judgment.  Dkt. 64 at 19-20.  Specifically, Plaintiff seeks to introduce "expert medical opinion on the dangers of inactivity, hypertension stroke risk, and fibromyalgia pain" to "stress the importance of exercise to relieve and prevent [his] morbid medical conditions."  Id. at 19.  Rule 706(a) does not authorize the district court to provide a plaintiff with funds for an expert witness or to appoint such a witness on a plaintiff's behalf; rather, it permits the appointment of an expert to aid the court.  See Hannah v. United States, 523 F.3d 597, 600 (5th Cir. 2008) (affirming district court's refusal to appoint expert witness for pro se prisoner alleging inadequate medical care).  The Court, however, does not require expert assistance to resolve the issues presented.  Therefore, Plaintiff's request for the appointment of a medical expert is DENIED.

### B. MOTION FOR SUMMARY JUDGMENT

#### 1. Deliberate Indifference Claims

Defendants do not dispute that, during the relevant time period, Plaintiff had a serious medical need based on a "variety of health issues in 2011, including for migraine pain."  Defs.' Mot. for Summ. J., Dkt. 54 at 5.  However, Defendants contend that summary judgment is warranted on the grounds that the undisputed evidence demonstrates that they:  (1) treated and provided medication in response to Plaintiff's complaints of migraine headaches and pain; and (2) provided him with sufficient access to outdoor exercise five days a week.  Dkt. 69 at 3.

#### a) *Collateral Estoppel*

Plaintiff argues, as an initial matter, that the doctrine of collateral estoppel bars Defendants from challenging his claims based on the issues decided in Plata v. Brown,

Case No. C-01-1351 THE (N.D. Cal.), and the Three-Judge Panel litigation, No. C-01-1351 THE (N.D. Cal.) and No. 2:90-cv-0520 LKK (E.D. Cal.). Dkt. 64 at 8-14. "The Plata class action concerns the constitutional adequacy of CDCR's inmate medical health care; the class consists of 'all prisoners in the custody of the [CDCR] with serious medical needs.'" Carrea v. Cal., No. EDCV 14-1006-CAS (MAN) 2014 WL 3845054, *3 (C.D. Cal. July 31, 2014). The issues presented in this case—namely, the alleged failure to provide adequate exercise and prescribe Topomax—were not litigated in Plata. Therefore, Defendants are not collaterally estopped from seeking summary judgment. See Parklane Hosiery Co. v. Shore, 439 U.S. 322, 326 (1979) ("Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation.").

### b) *Pain Medication*

The gist of the deliberate indifference claim against Defendant Sepulveda is that he allegedly denied Plaintiff access to the pain medications that other physicians had previously prescribed—namely, Topamax. However, a prison official is deliberately indifferent under the subjective element of the applicable test only if the official "knows of and disregards an excessive risk to inmate health and safety." Toguchi v. Chung, 391 F.3d 1051, 1056 (9th Cir. 2004). Here, the record does not support such a finding.

At the time Defendant Sepulveda reviewed Plaintiff's March 2011 request to renew Plaintiff's prescription for Topomax, he construed the request as one to use Topamax as a non-formulary medication. Sepulveda Decl. ¶ 4. The CDCR's pharmacy procedure required Plaintiff to utilize formulary medications first, before he could be considered for a non-formulary prescription medication such as Topamax. Sepulveda Decl. ¶¶ 3-4 and Exs. A-B. Consistent with the procedure, Defendant Sepulveda declined to approve the request for Topamax, since it was not medically indicated at that time. Defendant Sepulveda did, however, grant Plaintiff's request to be seen by a physician and recommended that he discuss other medication options with his primary care physician. Id. ¶ 4 and Exs. A-B.

Although the formulary medications ultimately proved to be ineffective, there is no evidence that Defendant Sepulveda was subjectively aware of this when he denied Plaintiff's request for Topamax in April 2011.[7]

Equally without merit is Plaintiff's ancillary contention that Defendant Sepulveda rejected Plaintiff's request for Topamax on November 16, 2011. Dkt. 1 at 14. As of September 30, 2011, Defendant Sepulveda no longer worked for CDCR, and he ceased reviewing requests for approval of non-formulary medications as of October 1, 2011. Sepulveda Decl. ¶ 5. As such, Defendant Sepulveda could not have acted with a "sufficiently culpable state of mind," since he was not involved in dispensing prescription medications after October 1, 2011. Farmer, 511 U.S. at 837, 847.[8]

In sum, Plaintiff was provided consistent and appropriate medical treatment. There is no evidence that Defendant Sepulveda purposefully ignored Plaintiff's complaints of pain. Plaintiff has made no showing that Defendant Sepulveda's course of action "was medically unacceptable under the circumstances," and was chosen "in conscious disregard of an excessive risk to [his] health." Toguchi, 391 F.3d at 1058 (citing Jackson v. McIntosh, 90 F.3d 330, 332 (9th Cir. 1996)). Accordingly, Defendants' motion for summary judgment is GRANTED with respect to Plaintiff's claim against Defendant Sepulveda for deliberate indifference to serious medical needs.

### c) *Request for Daily Exercise*

Plaintiff's deliberate indifference claim against Defendants Mensing, Spearman and Grounds is predicated on their alleged failure to provide him with access to the yard for exercise on a daily basis. While prison inmates must be given access to outdoor exercise, *daily* access is not required under the Constitution. See May v. Baldwin, 109 F.3d 557, 565

---

[7] To the contrary, the ineffectiveness of formulary medications only became apparent months later after Plaintiff's primary care physician documented that formulary medications had been tried and were not suitable for Plaintiff. Vieyra Decl., Ex. E.

[8] Plaintiff also complains that Dr. Jumao prescribed Topamax on July 25, 2011, but that recommendation was not forwarded to the North Medical Clinic. Dkt. 1 at 14. There is no allegation or evidence that Defendant Sepulveda was involved in the alleged failure to transmit Dr. Jumao's recommendation.

(9th Cir. 1997) (affirming grant of summary judgment for defendants on plaintiff's lack of exercise access claim, holding that no Eighth Amendment violation occurred where plaintiff was denied outdoor exercise for 21 days and suffered no medical effects); Spain v. Procunier, 600 F.2d 189, 199-200 (9th Cir. 1979) (affirming trial court's order that plaintiffs be given one hour of outdoor exercise access five days a week and finding that the amount ordered met constitutional requirements).

Here, Defendants have shown through uncontroverted evidence that Plaintiff has consistently been provided several hours of exercise in the yard each weekday (except on the rare occasion when a holiday fell on a weekday). Moreover, Plaintiff's primary care physician denied his request for a medical chrono entitling him to daily yard access for exercise (even on holidays) because there were no medical grounds to support his request. Mensing Decl. ¶¶ 2-3, 5-6, Exs. A-C. Plaintiff has made no showing that Defendants Mensing, Spearman and Grounds knew Plaintiff faced a substantial risk of harm in not having daily yard access for exercise, and that they ignored that risk. See Farmer, 511 U.S. at 847; Jett, 439 F.3d at 1096. Accordingly, Defendants' motion for summary judgment is GRANTED with respect to Plaintiff's claim against Defendant Mensing, Spearman and Grounds on Plaintiff's deliberate indifference claim arising from the alleged lack of daily yard access.

### 2. Qualified Immunity

As an alternative basis for summary judgment, Defendants contend that they are entitled to qualified immunity. Dkt. 54 at 18-19. "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." Brosseau v. Haugen, 543 U.S. 194, 198 (2004). The issue of qualified immunity generally entails a two-step process, which requires the court to first determine whether the defendant violated a constitutional right, and then to determine whether that right was clearly established. Saucier v. Katz, 533 U.S. 194, 201-02 (2001).

In <u>Pearson v. Callahan</u>, 555 U.S. 223 (2009), the Supreme Court modified the <u>Saucier</u> test and "gave courts discretion to grant qualified immunity on the basis of the 'clearly established' prong alone, without deciding in the first instance whether any right had been violated." <u>James v. Rowlands</u>, 606 F.3d 646, 650-51 (9th Cir. 2010) (discussing <u>Saucier</u> standard after <u>Pearson</u>). The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. <u>Saucier</u>, 533 U.S. at 202; <u>see, e.g.</u>, <u>Estate of Ford v. Ramirez-Palmer</u>, 301 F.3d 1043, 1049-50 (9th Cir. 2002) (court may grant qualified immunity by viewing all of the facts most favorably to plaintiff and then finding that under those facts the defendants could reasonably believe they were not violating the law). In the instant case, the Court has concluded that Plaintiff's constitutional rights were not violated. Thus, viewing the record in the light most favorable to Plaintiff, Defendants prevail as a matter of law on their qualified immunity defense because the record establishes no Eighth Amendment violation. See <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818 (1982).

Even if a constitutional violation occurred, Defendants remain entitled to qualified immunity. While Plaintiff's right to be free from deliberate indifference to his serious medical needs was clearly established in 2011, Defendants could have reasonably believed that their actions were lawful. First, Defendant Sepulveda's decision in April 2011 denying Plaintiff's request for non-formulary Topomax was based on his determination under the CDCR pharmacy procedure that Plaintiff was first required to try formulary medications. Therefore, a reasonable medical staff member in Defendant Sepulveda's stead could have believed that such a decision did not violate Plaintiff's clearly established constitutional rights. Second, it would not have been clear to a reasonable official in the position of Defendants Mensing, Spearman and Grounds that their actions or inactions could have violated Plaintiff's constitutional rights. The record shows that Plaintiff was receiving several hours of yard access for exercise each weekday, consistent with his status as an A1A Unassigned inmate and case law regarding inmates' rights to outdoor exercise. A

reasonable person acting in their stead could logically conclude that daily access to the yard for exercise five days a week was sufficient, particularly where daily exercise was not "medically indicated" for Plaintiff.  Accordingly, Defendants are entitled, as an alternative matter, to qualified immunity with respect to Plaintiff's aforementioned deliberate indifference claims.[9]

## IV.     CONCLUSION

Accordingly,

IT IS HEREBY ORDERED THAT:

1.     Defendants' motion for summary judgment is GRANTED.

2.     Plaintiff's claim against Dr. Ahmed are DISMISSED.

3.     Plaintiff's motion for appointment of counsel is DENIED.

4.     The Clerk of the Court shall enter judgment, close the file and terminate all any pending motions.

IT IS SO ORDERED.

Dated:  9/30/14

*Saundra B Armstrong*
SAUNDRA BROWN ARMSTRONG
United States District Judge

P:\PRO-SE\SBA\CR.12\Olivier0176.grantMSJrev093014.docx

---

[9] Summary judgment should be granted to Defendants on Plaintiffs' punitive damages demand as well.  See Dkt. 1 at 18.  Punitive damages may be awarded in a § 1983 suit only "when defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." Smith v. Wade, 461 U.S. 30, 56 (1983).  Here, there is no indication whatsoever that any of Defendants' alleged wrongdoing rose to this requisite high level of culpability.